Ruffin, C. 3.
 

 The judgment must be affirmed. It is not disputed that the return was no answer to the writ at common law. Therefore, the amercement was proper under the' acts of 1777, c. 118-, s. 5, and of 1821, c. 1110, standing by themselves. But it was contended, as the act of 1807, Rev.St. c. 45, s. 17, makes it lawful for a sheriff to leave property in the debtor’s possession and to take a forth-coming bond, that it follows he may return that matter as his excuse for not selling the property and bringing in the money. Even if that were true, this return would be radically defective, in not setting forth the bond as to the obligors, penalty, and the particular effects mentioned in it, and the day for their delivery :• so that it might be seen that a proper and effectual bond had been taken. But the whole position is, in the opinion of the' court, erroneous. The purpose of the act of 1807 was merely to declare such bonds valid, notwithstanding they are given as indemnities to the sheriff, for postponing the execution of his writ. The act operates between the sheriff and the debtor, and his sureties, and between them alone. The creditor is left to all his rights and remedies against both the debtor and the sheriff. The act has been always so understood ; and, indeed, the provision is express, “ that the said officers shall, nevertheless, remain liable as heretofore, in all respects, to the plaintiff’s claim.” The creditor has no con-
 
 *389
 
 ©ern with the bond. He is neither bound, nor allowed to take an assignment of it. It is purely an indemnity to the sheriff; and, that it may be an effectual indemnity, both as to the amount and the period of the recovery on it, the act of 1822 gives a summary remedy, by motion, for all such damages as the officer may have sustained or be liable to sustain. If taking a forth-coming bond would exonerate the sheriff from the duty of selling, or authorize him to return that matter as an excuse, it is obvious, that the creditor would lose his remedy by an amercement, and, indeed, could never enforce a sale,since the sheriff might take and return such bonds
 
 in perpetuo,-
 
 as successive executions should be delivered
 
 to
 
 him.
 

 But it was further argued, that, as the act, Rev. St. c. 31, s. 61, makes the sheriff subject to indictment as well as to amercement, for not duly executing and returning process, the amercement ought not to be imposed but for some criminal act; and, therefore, not for a thing which the law author-ised the sheriff to do. To this argument, there are several answers. In the first place, the amercement was first given by the act of 1777, of £50 to be paid to the party grieved by' order of the court on motion. That act neither provided for an indictment, nor even for a penalty to be recovered by any person suing for it to his own use, in whole or in part. If did not treat the act as an offence against the public, for which there should be a proceeding
 
 criminaliter,
 
 properly speakings But the provision was made for the better administration of the law in actions between citizens, and in advancement of the justice due to the suitor, by giving to the suitor such sum as, it was supposed, would be, in general, a compensation for the inconvenience and loss arising from the delay in the discharge of the sheriff’s duty. It was really, therefore, remedial in its character, and not to be interpreted with any such strictness, as is proper in respect to penal statutes, in the ordinary sense of those terms.
 

 Then came the act of 1821, which was rendered necessary by several considerations. From the depreciation of the currency of 1777, the
 
 £50
 
 was found inadequate to compensate1
 
 *390
 
 the party, or to excuse diligence by'’ the officers. Indeed, it was known that debtors often prevailed on sheriffs to omit doing execution, by paying down to them the trifling fine. rpQ prevent such scandal to the law and such injury to the suitor, the Legislature enlarged the amercement to the party grieved to $ 100. But, as even that might in some cases be advanced by the debtor, and it was intended to enforce effectually the execution of process in all cases, it was added in'that act, “ that said sheriff shall for every such neglect be further subject to indictment.” Now, whether the defendant would, under the circumstances of this case, be liable on indictment, need not be considered. It might probably turn on the good faith of his acts and his intentions, as found by a jury. But, admitting that he might not be, it does not follow, that he ought not to be amerced at the instance and for the benefit of the suitor. If the provisions for amercement and indictment were parts of one and the same original statute, they would not necessarily be co-extensive in their application, as they were enacted
 
 diverso intuitu.
 
 But they are not so to be regarded ;• for the first is but re-enacted from a former statute, and its remedial character in the first is not lost by its conjunction with a new provision in the latter act, which makes the defaulting officer
 
 further
 
 subject to indictment. The Legislature did not mean, by creating additional guards against official defaults, to diminish the redress to the suitor for his private loss, to which he was before entitled. But this is placed beyond all doubt by the Rev. St. ch. 109, s. 18; for although the Rev. St. ch. 31, s. 61, re-enacts the act of 1821 simply, and gives both the amercement and the indictment; yet in the 109th chapter, every thing about an indictment is omitted, and the acts of 1777 and 1821, are combined and reenacted in respect of the amercement alone : which shews, that the amercement is merely a measure of redress for the suitor, and, therefore, that he is entitled to it in every case in which the officer fails to make “due return” of a writ.
 

 Per Curiam, Judgment affirmed.